ORDERED in the Southern District of Florida on  05/18/07.

Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | Case No. 05-20789-BKC-RBR |
| William Charles Stasch, | Chapter 7 |
| Debtor. _____/ | |
| The Cadle Company, | |
|     Plaintiff<br>vs. | Adv. No. 05-2103-BKC-RBR-A |
| William Charles Stasch, | |
|     Defendant _____/ | |

### MEMORANDUM OPINION SANCTIONING DEBTOR FOR DISCOVERY VIOLATIONS

**THIS MATTER** came before the Court on February 21, 2007 on the Plaintiff, The Cadle Company's (hereafter "Cadle"), Motion to Strike Debtor's Pleadings and Enter Judgment dated September 6, 2006, (C.P. 126) and the supplemental filings (C.P.151 and 170). The Court has also reviewed the entire docket, the submissions, and heard from the parties. For the reasons that follow the Court imposes sanctions upon the Defendant.

**Procedural Background and Findings of Fact**

On May 20, 2005, Cadle filed its adversary proceeding against the Debtor objecting to the Debtor's discharge. Trial was originally set before visiting Judge Utschig on January 30, 2006. (C.P. 18). On January 24, 2006, Cadle filed a motion to continue trial (C.P. 23) stating that discovery was not complete and that Cadle had found substantial new and unexpected evidence. (C.P. 23). That same day Cadle amended its complaint (C.P. 25).

First Request for Production

On June 23, 2005, Cadle made an extensive request for production (C.P. 104 Exhibit A). There are five requests which have been the basis of contention between the parties.

(1) Request 21 asked for "[a]ll documents that refer to, relate to, reflect or concern any transfer made to or from any financial account held for the benefit of Debtor by any third party."

(2) Request 24 asked for "[a]ny and all documents concerning any interest in, or claimed title to, any certificates of deposit, letters of credit, money orders, cashier's checks, traveler's checks, bank deposits, or escrow funds owned or held by Debtor."

(3) Request 25 asked for "[a]ny and all documents relating to any account in which any of Debtor's earnings or other funds have been deposited, whether a Debtor continued to have an interest in it or not."

(4) Request 130 asked for "[a]ll bank statements, cancelled checks, and other documents showing the income generated by assets which was paid to your insiders (as defined by Chapter 726, Florida Statutes), subsequent to your transfer of those assets, as well as any document showing the identities of the recipients of said income, including names of financial institutions, the names of the account holders, the account numbers where the income from those assets was deposited, and the present location and value of said funds.

(5) Request 132 asked for "[a]ll checks, bank statements, wire transfers, certificates of

deposit, or any other documents showing any payments or transfers of funds in excess of one thousand dollars ($1000.00) to insiders by you, and were made by you or any business entity in which you had an interest at the time of the transfer, including, but not limited to, all documents showing the amount of said transfers, the dates of said transfers, the account numbers, institution name, identity of and the owners of said account from which said transfer was made and the account number, institution name and the owners of the accounts into which said transfers were deposited, and the present balance of all said accounts."

The Debtor responded to these requests as follows (C.P. 104 Exhibit B):

(1) Response to request 21. "No such documents are in STASCH'S possession, custody or control."

(2) Response to request 24. "No such documents are in STASCH'S possession, custody or control."

(3) Response to request 25. "Objection: Plaintiff's request No:25 is vague, overbroad and burdensome."

(4) Response to request 130. "No such documents are in STASCH'S possession, custody or control."

(5) Response to request 132." Objection: Vague, overbroad, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiver of said Objection, no such documents are in STASCH'S possession, custody or control."

The case then proceeded normally to trial, which was reset for May 31, 2006. According to the Order Setting Trial (C.P. 82) discovery was to end by May 17, 2006. Furthermore, the same Order provided that by May 24, 2006, the parties had to exchange with each other and file with the Court their exhibit registers.

On the eve trial Cadle filed a motion to continue the trial (C.P. 103). The reason for the

motion was that the Debtor had included in his late filed exhibits documents which had been requested and not produced. The Court granted the motion to continue trial (C.P. 108). In that order the Court noted that failure of the Debtor to make full discovery in this case is "outrageous." (C.P. 108). After more contested depositions (C.P. 113 and 122), Cadle brought the instant motion (C.P. 126) and the Court entered its Order (C.P. 131) requiring the Debtor to provide discovery.

Cadle's discovery issues can be divided into four component parts: (1) failure to turn over documents regarding the Sullivan and Powell ("S&P account") accounts; (2) failure to turn over documents relating to the Bank of America Account ending in 8563 ("8563 account"); (3) failure to supplement discovery; and (4) the violation of Court Orders C.P. 82 and 131.

### Failure To Turn Over Documents Related To The S&P Account

Cadle sought all the documents relating to the S&P Account. (C.P. 137). The Debtor at first refused to provide this discovery. At the same time Debtor objected to Cadle seeking it from third parties. Eventually, the Debtor made partial production. Cadle was also able to secure many of the documents directly from S&P.

Pursuant to Court Order (C.P. 131) Cadle listed the following as being produced by the Debtor: (1) statement for S&P account #1 from 2000. (2) statement for S&P account #2 covering the period from 1-1-04 to 9-30-04. (3) 3 checks.

Pursuant to the same Court Order (C.P. 131) Cadle listed as having received the following directly from S&P: (1) Schedule K form listing the Debtor as an account holder. (2) check 3596 made out to the Debtor in the amount of $90,000. (3) check 3764 made out to the Debtor in the amount of $15,000. (4) check 3578 made out to the Debtor in the amount of $10,000. The Debtor never turned over any of these materials.

### Failure To Turn Over Documents Related To The 8563 Account.

Cadle also requested the Debtor to turn over all of the statements or checks showing where the Debtor's money has been deposited. Pursuant to Court Order Cadle listed the

following as not being produced by the Debtor: (1) any 8563 Account statement prior to December 19, 2000. (2) several missing pages from the statements (C.P. 137 Exhibit E).

Equally troubling to the Court are the multiple and apparently differing versions of certain pages of the statements that were eventually turned over. Attached to Cadle's Court Ordered list (C.P. 131) are the following differing versions of the statements: (1) page 3 of December 18, 2002 statement and (2) page 2 of the March 19, 2003 statement.

Failure To Supplement Discovery

On the eve of trial the Debtor filed his exhibits as required by Court Order. In his trial exhibits he included letters between Allen Benjamin and Ms. Den Bleyker. These documents fall into the class of documents that had been properly requested. This late disclosure caused the Court to order discovery be reopened. (C.P. 108). In that same order the Court noted that it would be the Debtors "last opportunity to make full and complete discovery prior to trial." (C.P. 108). This reopening of discovery has caused a lengthy delay in the resolution of this case.

Failure to Abide By Court Orders 82, and 131.

The Court has entered two orders that have been violated. The Order Setting Trial (C.P. 82) required that the parties exchange their trial exhibits on or before May 24, 2006. The Debtor did not produce his exhibits until May 26, 2006. The Court, recognizing that "substantial discovery" still remained, ordered that the trial be continued and set a status conference. (C.P. 120).

Even with the admonition that this was his last chance the debtor continued to be uncooperative with the reopened discovery. Cadle, then filed its motion strike the Debtors pleadings (C.P. 126). The Court issued a ruling requiring the debtor to produce discovery. (C.P. 131). This order spelled out in great detail what was to happen next.

First, within 20 days of the order the Debtor was to file an "Affidavit under oath describing in detail all discovery turned over to the Plaintiff and the date of that delivery." (C.P. 131). Instead of following that direction, Debtor's counsel filed an affidavit. Then Cadle was to

file a written request for production (C.P. 137) describing in detail all the items that had not been delivered. 10 days after that the Debtor was to respond stating "item-by-item if the document exists, whether or not it can be produced by the Debtor, and if not produced by Debtor, where and from whom the document can be obtained." (C.P. 131). Additionally, the Debtor was to arrange for delivery and inspection of all documents with 10 days of the response. (C.P. 131).

Debtor's response (C.P. 149) failed to do four things. It failed to state item-by-item if each non-produced document exists. It failed to state whether each non-produced item can be produced by the Debtor. It failed to state where and from whom the item can be obtained if the Debtor cannot produce it. Finally, it failed to arrange for delivery and copying of the documents. In fact, no documents were produced in response to the request for production.

The foregoing has sufficiently cataloged the dispute and actions of the parties. The Court now turns to the determination of which sanctions are appropriate.

### Conclusions of Law

Pursuant to FED. R. BANKR. P. 7037, FED. R. CIV. P. 37 applies in adversary proceedings. Rule 37(b)(2) permits the Court to impose sanctions for discovery violations. A primary purpose of Rule 37 is to prevent and deter future discovery abuses. *Adolph Coors Co. v. Movement against Racism & Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985)(citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643(1976)). Sanctions may also be appropriate if the offending party has engaged in "'willful bad faith and callous disregard' of court directives." *Adolph Coors Co. v. Movement against Racism & Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985)(citing *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 666 (5th Cir. 1981)).

In the previous section the Court extensively detailed the contested discovery history of the parties. The current dispute between the parties can be simply summarized as: the Plaintiff made a legitimate request for production of documents; the Debtor failed to adequately produce

the documents; the Court ordered production of the documents; the Debtor failed to abide by the Court's order. The actions of the Debtor have tried the patience of the Plaintiff and the Court. As such, the Court has decided to impose sanctions upon the Debtor for its discovery abuses.

The Plaintiff asks the Court to strike the Debtor's pleadings and enter a default judgment against the Debtor. In order to impose the sanction of default, as requested, the Court must find: "(1) that the party exhibited a willful or bad faith failure to obey a discovery order; (2) that the moving party was prejudiced by that violation; and (3) that a lesser sanction would fail to punish the violation adequately and would not ensure future compliance with court orders." *Inmuno Vital, Inc., v. Telemundo Group, Inc.,* 203 F.R.D. 561, 571 (S.D. Fla 2001).

The Court agrees with the need to sanction the Debtor; I further find that the first two prongs of the test have been met. Nonetheless, based on binding and established case precedent the Court must first look to other less severe sanctions before it may strike the Debtor's pleadings and enter a default. *See Adolph Coors Co. v. Movement against Racism & Klan,* 777 F.2d 1538, 1542 (11th Cir. 1985)(citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)); *Inmuno Vital, Inc., v. Telemundo Group, Inc.,* 203 F.R.D. 561, 571 (S.D. Fla 2001).

The simplest alternative sanction available is to impose a monetary sanction or fine. However, in the bankruptcy context such a fine may not be recoverable from an insolvent chapter 7 debtor. Therefore, this type of sanction is not feasible.

The next type of sanction that the Court will consider is drawing a negative inference against the offending party. Negative inferences are most often used when one party alleges spoilation of evidence. *See e.g. Easton Sports, Inc. v. Warrior Lacrosse, Inc.,* 2006 U.S. Dist. LEXIS 70214, at *14-15 (E.D. Mich. 2006);*Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 552-53 (6th Cir. 1994)(noting the rationales for using negative inferences against parties who destroy evidence). However, there is little difference between evidence that is destroyed or

withheld. In both cases the evidence is unavailable to the trier of fact. Courts have stated that negative inferences are "one of the least severe" types of sanctions. *See Inmuno Vital, Inc., v. Telemundo Group, Inc.,* 203 F.R.D. at 574. Therefore drawing a negative inference is less severe than striking pleadings. However, such inferences are not without consequence. In a bankruptcy case because the trier of fact is a learned Judge rather then a lay jury, it is less likely that the inference will be ignored.

In *Smoothline v. North American Foreign Trading Corp.* the court granted an negative inference against the plaintiffs for the repeated failure of the plaintiffs to comply with explicit discovery requests. *See Smoothline v. North American Foreign Trading Corp.*, 2003 U.S. Dist. LEXIS 3085, at *2-5, 15 (S.D.N.Y. Mar. 7, 2003). Similarly, this Court will grant Cadle an inference against the Debtor for the documents requested and which were not produced. This type of sanction is particularly appropriate in a document intensive case. This is because such action ameliorates the detrimental effect of the discovery abuse. For each document that was not produced, but, which should have and could have been, the Court will infer that the document supports Cadle's position.

While the negative inference sanction is appropriate, it does not sufficiently address the actions taken by the Debtor. Therefore, the Court will also impose two additional sanctions. First, the Court will deem certain facts as established and second it will prevent the Debtor from offering certain evidence.

According to FED. R. CIV. P. 37(b)(2)(A) the Court may deem certain facts established as a sanction for discovery violations. In this case only Counts One, Two, and Three remain to be litigated. As a sanction for the Debtor's actions during discovery the Court will deem established the following facts: (1) That the Debtor was a holder of the S&P Account and that he was aware of all the transactions relating to it. (2) That the Debtor concealed the S&P Account checks (check # 3596, 3674, 3578) totaling $115,000. (3) That the Debtor has engaged in a general pattern of concealment of his financial affairs.

Finally, FED. R. CIV. P. 37(b)(2)(A) permits the Court to prohibit the Debtor from introducing evidence. The Debtor may not introduce any summary. Furthermore, the Debtor may not introduce the following which were included in the original exhibit binder: (1) Exhibit OOO, Bank of America Transfer Request and Authorization dated 12/27/02; (2) Exhibit QQQ, the closing statement dated June 2, 200 for the purchase of 1507 S.E. 12th Street, Deerfield beach Fl; (3) Exhibit VVV, which consisted of the letter from Mr. Benjamin dated November 16, 2001, the funds transfer request, the RBC check dated July 26, 2005, and the completion statement dated July 20, 2005; (4) Exhibit XXX, Diane Den Bleyker letter dated October 2, 2001; (5)Exhibit YYY, Mr Benjamin Letter to Mr. Tangora dated January 26, 2006; (6) Exhibit ZZZ the expenditure summary.

### Conclusion

This case is quickly approaching its second year "anniversary". The entire delay can basically be blamed on the protracted and heavily litigated discovery. This case will forthwith proceed to trial or other disposition on the merits. Any further discovery issues will result in the striking of pleadings and if appropriate, summary judgment in favor of the non-offending party. There will be no more warnings, chances, or opportunities. Accordingly, it is hereby,

**ORDERED AND ADJUDGED** that The Cadle Company's, Motion to Strike Debtor's Pleadings and Enter Judgment (C.P. 126) is **PARTIALLY GRANTED.** The Debtor will be sanctioned. However, the request to strike the pleadings is **DENIED**, as there are less severe sanctions that are appropriate. The sanctions will be as follows:

1. For each document that was not produced, but, which should have and could have been, the Court will infer that the document supports Cadle's position.

2. The Court will deem established the following facts:

    (A) That the Debtor was a holder of the S&P Account and that he was aware of all the transactions relating to it.

    (B) That the Debtor concealed the S&P Account checks (check # 3596, 3674,

3578) totaling $115,000.

    (C) That the Debtor has engaged in a general pattern of concealment of his financial affairs.

3. The Debtor will be prohibited from introducing the following as evidence:

    (A) Exhibit OOO, Bank of America Transfer Request and Authorization dated 12/27/02;

    (B) Exhibit QQQ, the closing statement dated June 2, 200 for the purchase of 1507 S.E. 12th Street, Deerfield beach Fl;

    (C) Exhibit VVV, which consisted of the letter from Mr. Benjamin dated November 16, 2001, the funds transfer request, the RBC check dated July 26, 2005, and the completion statement dated July 20, 2005;

    (D) Exhibit XXX, Diane Den Bleyker letter dated October 2, 2001;

    (E) Exhibit YYY, Mr Benjamin Letter to Mr. Tangora dated January 26, 2006;

    (F) Exhibit ZZZ the expenditure summary.

4. Nothing in this Order will be deemed to prevent Cadle from introducing any legally allowable evidence.

###

Copies to be furnished to:

Keith A Graham, Esq
C. David Tangora, Esq