**ORDERED** in the Southern District of Florida on 03/31/08

Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:

STASCH, WILLIAM CHARLES,

      Debtor.

Case No.  05-20789-BKC-RBR
Chapter 7

_____/

THE CADLE COMPANY,

      Plaintiff,

vs.

STASCH, WILLIAM CHARLES

      Defendant

Adversary No.  05-2103-BKC-RBR-A

_____/

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENYING DEBTOR'S DISCHARGE (D.E. 198)

THIS MATTER came before the Court upon the Plaintiff's Motion for Summary Judgment Denying Debtor's discharge (D.E. 198).  The Court has reviewed the Motion and the documents referenced therein, the Affidavit of C. David Tangora (D.E. 214), the

Affidavit of Williams Charles Stasch (the "Debtor") (D.E. 213), Debtor's Trial Exhibit ZZZ (D.E. 216) and the Court file.

### Procedural Background

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 17, 2005. THE CADLE COMPANY (hereinafter "Cadle"), timely filed an adversary proceeding objecting to the Debtor's discharge Pursuant to § 727(a)(2)(A)6(B)), § 727(a)(3), § 727(a)(4)(A), § 727(a)(5)[1], and § 727(a)(6). This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), 28 U.S.C. § 157(b)(1), and 28 U.S.C. § 157(b)(2)(J).

Cadle filed its motion for Summary Judgment [D.E.198] on September 28, 2007. In its motion Cadle relies upon certified public records and deposition transcripts and exhibits attached as Exhibits D through G to (D.E. 198), Affidavits of Leslie Osborne (Ex. "A" to D.E. 198), of John Benetis (Ex. "B" to D.E. 198) and of Michael Sullivan (Ex. "C" to D.E. 198), the previously filed deposition excerpt of Jennifer Weber (Ex. D to D.E. 170), the Sworn Testimony of William C. Stasch (Ex. C to D.E. 170), Debtor's Sworn Schedules and Statement of Financial Affairs (D.E. 1), and the prior Court Findings in D.E. 179 and D.E. 188. The Summary Judgment hearing was continued twice at the Debtor's request.

On the afternoon and evening prior to the continued Summary Judgment hearing

---

[1]  On April 11, 2006, the Court denied Cadle's Motion to Continue Trial (D.E. 23) and Partially Granted Debtor's Motion for Summary Judgment as to Counts 4 and 5 of the Original Complaint (D.E. 83). Cadle contends the Court's subsequent findings and ruling in D.E. 179 Memorandum Opinion Sanctioning Debtor for Discovery Violations requires entry of Summary Judgment in Cadle's favor on the previously dismissed Count 4, due to Debtor's failures to explain the loss of his assets, including his timeshare, two boat slips and his concealed funds from his S&P Partnership and Bank of America Account 8563, in violation of § 727(a)(5), as Cadle had alleged in Count 4. Cadle further contends partial Summary Judgment was mistakenly granted in Debtor's favor as a result of Debtor's false schedules, false responses to Cadle's Request for Production, and numerous discovery violations where Debtor concealed the above assets, despite Cadle's prior discovery (D.E. 23, 28 and 29).

PL.Memo.Opinion.Granting.SJ.doc

of December 20, 2007, Debtor and his counsel filed affidavits opposing summary judgment (D.E. 213 and 214).  Debtor's Affidavit relies upon extensive hearsay statements, including multiple documents, none of which are attached to his Affidavit or are part of the court file.  On January 4, 2008, Cadle's counsel supplemented Cadle's Motion for Summary Judgment by filing Debtor's Trial Exhibit ZZZ that had been referred to in Paragraph 7 of Debtor's Affidavit, which was previously reviewed by this Court on May 31, 2006, when the Court's review of Debtor's untimely Trial Exhibits caused the Court to continue the trial date due to Debtor's violation of Court Order D.E. 82.

During the December 20, 2007 Summary Judgment hearing the Court found that both the Debtor's and Mr. Tangora's Affidavits were untimely and filed in violation of Local Rule 5005-1(F).  The Court struck Mr. Tangora's Affidavit, but decided to consider the Debtor's Affidavit in ruling upon Cadle's Motion.

Cadle's Motion alleges Debtor concealed and made false statements regarding: (1) Debtor's records; (2) ownership and disposition of Debtor's two weeks of timeshare; (3) two boat slips; (4) his ownership of and transfers of funds into the Bank of America account ending in 8563 titled in Diane Den Bleyker's name; (5) Debtor's disposition of S&P Partnership funds, Debtor's Directorship in Exuma Adventures, Ltd.; and (6) Debtor falsely listed payments and a scheduled lien on his Mercedes, allegedly held by his daughter, Jennifer Weber.

## FINDINGS OF FACT

**Debtor's interest in the Bank of America Account ending in 8563 was not filed.**

The Affidavit of Leslie Osborne, Debtor's Affidavit (D.E. 213), Debtor's Trial

Exhibit ZZZ (D.E. 216), Debtor's Bankruptcy Schedules and the Court's prior Orders (D.E. 179 and 189), show Debtor concealed and failed to disclose his interest in funds transferred into and held in a Bank of America account ending in 8563, titled in Den Bleyker's name, during the time period alleged.

In Paragraphs 6 and 9 of Debtor's Affidavit, Debtor falsely states that he had "no interest in the Bank of America account," and that Den Bleyker held no funds for Debtor at the time he filed his bankruptcy. Paragraph 7 however, contradicts Paragraph 6 and 9 by admitting Debtor's "Expenditure and Deposit Summary" (Debtor's Trial Exhibit ZZZ, D.E. 216) shows Debtor's funds in the 8563 account titled in Den Bleyker's name.

Paragraph 7 of Debtor's Affidavit (D.E. 213) falsely stated Debtor's funds in the Bank of America account 8563, titled in Den Bleyker's name, were "totally expended almost one year prior to" Debtor's bankruptcy as shown in the Debtor's "Expenditure and Deposit Summary." Trial Exhibit ZZZ (D.E. 216) contains Debtor's "Expenditure and Deposit Summary." The Debtor's "Expenditure and Deposit Summary" establishes that Debtor previously admitted that $767.80 of Debtor's funds still remained in the 8563 account on Debtor's February 17, 2005, the date of Debtor's bankruptcy petition filing. It likewise shows Debtor admitting to depositing $30,760.86 and withdrawing $64,146.29 from that account in 2004. Debtor's Exhibit ZZZ shows (a) Debtor deposited $20,861.86 into Den Bleyker's Bank of America account on 4/4/2005 that is not disclosed in his Affidavit, (b) Debtor's social security income continued to be deposited into Den Bleyker's Bank of America account through 8/2/2004; (c) Debtor's condominium rental income from the Knecht's continued to be deposited into Den Bleyker's Bank of America account through 3/15/2004; and (d) payments by the Knecht's to Debtor on Sun Harbor's

Note were deposited through July 12, 2004 into Den Bleyker's Bank of America account.

All of the concealed foregoing transactions and funds occurred in the year preceding Debtor's bankruptcy and were not adequately disclosed in Debtor's Bankruptcy Schedules. Debtor's Trial Exhibit ZZZ also fails to include Debtor's deposits and Debtor's income preceding January 2001, such that Trial Exhibit ZZZ is understated by the amount of Debtor's income that was deposited into this account prior to 2000, which records have still not been produced by the Debtor. Neither Debtor or Den Bleyker have filed any Affidavit or account records to refute Debtor's admissions contained in Debtor's Trial Exhibit ZZZ. Debtor's funds in Bank of America account 8563 have never been scheduled or surrendered to Debtor's bankruptcy trustee.

The Affidavit of John Benetis, attached as Exhibit "B" to D.E. 198 and Debtor's admissions in Debtor's Trial Exhibit ZZZ, also establish that Debtor also concealed and failed to produce all checks prior to check number #141, 339 additional checks ranging from check numbers 141 through 1142, and all checks after 1142, from the 8563 account. (D.E. 179) Debtor also failed to produce complete copies of any 8563 bank statements other than the May 2002 statement. All other statements were either missing pages or were not produced at all. John Benetis' Affidavit (Ex. B to D.E. 198), also reflects Debtor produced two differing versions of the following pages of the same monthly statements:

|     |     |     |
|-----|-----|-----|
| (a) | 11/19/02 – 12/18/02 | 2 different versions of page 3 |
| (b) | 12/19/02 – 01/21/03 | 2 different versions of page 3 |
| (c) | 02/19/03 – 03/19/04 | 2 different versions of page 2 |
| (d) | 12/19/03 – 03/19/04 | 2 different version of page 2 |

John Benetis' Affidavit also identifies additional pages of the Bank of America statements produced by Debtor, that were altered to conceal transactions that occurred

within the date ranges of the statements, that should have appeared on the following altered pages (Ex. B to D.E. 198):

    (a)    04/19/03 – 05/19/03 page 3 is altered
    (b)    08/20/03 – 09/18/03 page 2 is altered
    (c)    10/22/03 – 09/18/03 page 3 is altered
    (d)    11/18/03 – 12/18/03 pages 3 & 4 are altered

The Court has previously found that the Debtor produced two different versions of the supposedly same pages of the statements from account 8563. (D.E. 179)

Debtor's Motion for Rehearing (D.E. 182, p.5, ¶ 17) admits the above facts, but states "The differing versions of certain pages are merely a method of redaction, in that the information omitted was not an expense or income of Debtor's, and therefore was not relevant." Debtor's subsequent Affidavit (D.E. 213) also contains Debtor's subsequent admissions that Debtor knew the produced documents had been altered by Den Bleyker (D.E. 213, ¶ 39), confirming Debtor intentionally produced altered, incomplete copies of partial Bank of America statements, instead of true complete copies of the documents he had been ordered to produce.

Pursuant to the Memorandum Opinion Sanctioning Debtor for Discovery Violations (D.E. 179), the Court granted the sanction that the Court will draw negative inferences "For each document that was not produced, but, which should have and could have been, the Court will infer that the document supports Cadle's position." Cadle is entitled to that negative inference, for the missing checks, missing altered Bank of America statements identified in the preceding paragraphs that Debtor failed to produce.

Paragraphs 23, 24 and 25 of Debtor's Direct Testimony filed in this adversary as Exhibit C to D.E. 170, contain Debtor's admissions that he concealed his condominium rental income, his receipt of $97,683.00 in probate distributions, and his social security

income, that were transferred into the Bank of America account 8563, titled in Den Bleyker's name, within the year preceding his bankruptcy, solely in order to hinder his creditors, because he knew the funds would be garnished by Cadle if he had opened an account in his own name.  Debtor's admissions are confirmed by Debtor's Trial Exhibit ZZZ (D.E. 216).  Likewise, Debtor's Affidavit, (D.E. 213) in Paragraph 10 again admits that Debtor concealed his funds in his Bank of America account titled in Den Bleyker's name to prevent Cadle from garnishing Debtor's funds.  The Court finds Debtor made false statements about, concealed records, concealed his ownership and transfers of his funds to the Bank of America Account 8563 in Den Bleyker's name, and the disposition of his funds within the year preceding Debtor's bankruptcy and post-petition.

**Debtor's ownership of a timeshare was concealed and belatedly scheduled only after Cadle obtained discovery concerning the ownership.**

The deposition transcript of Louise Ferguson and deposition exhibits attached as Exhibit "F" to D.E. 198, and Debtor's Amended Schedules, show Debtor owned two weeks of timeshare that Debtor listed for sale on August 3, 2004, within one year prior to filing his bankruptcy petition on February 17, 2005, that were owned and still listed for sale by Debtor on May 17, 2006.

Debtor's schedules were false because he concealed his ownership and records of the timeshare units, which were not disclosed in Debtor's initial Bankruptcy Schedules. Debtor's Amended Schedules dated May 30, 2006, (D.E. 12) were not filed until after Cadle had already deposed Louise Ferguson on May 17, 2006, proving Debtor's ownership and concealment of his timeshare units in his initial Bankruptcy Schedules and Debtor's attempt to sell his timeshare units before and after his bankruptcy.

In Paragraphs 2 and 3 of Debtor's Affidavit, Debtor attempts to claim that the

timeshare had no value, or, inconsistently that the Debtor had transferred them to his brother in 2000, such that Debtor had no interest in the timeshares at the time he filed his Bankruptcy Schedules. Debtor's explanation is not credible of believable. The Court finds Debtor intentionally made false oaths and concealed his timeshare units and records when he omitted the timeshare units from his initial Bankruptcy Schedules.

**Debtor's ownership of two boat slips were concealed and never scheduled or disclosed.**

The certified copy of the recorded deed attached to D.E. 198 as Exhibit "D" shows Debtor, individually, acquired a boat slip described as Unit 39B in the Landings at Marina Cove, Flagler County, Florida, which was not disclosed in Debtor's Bankruptcy Schedules. Debtor has not produced any deed showing he conveyed said property out of his individual ownership. Debtor's concealment of his boat slip and related records from Flagler County shows Debtor's concealment and failure to disclose this asset and related records.

The certified copy of the deed attached to D.E. 198 as Exhibit "E" shows Debtor, individually, acquired Boat Slip #44 in Pompano Beach, Broward County, Florida, which was not disclosed in Debtor's Bankruptcy Schedules. Debtor has not produced any deed showing he conveyed away his individual interest in Boat Slip #44. Although Debtor executed a Trustee's Quit Claim Deed for Boat Slip #44, on September 8, 2004, only 5 months prior to filing his bankruptcy petition, Debtor, has not produced any deed conveying this boat slip to a Trust. Therefore Debtor's Trustee deed did not divest Debtor of his individual ownership interest in Boat Slip #44.

Debtor's Affidavit regarding the boat slips is based entirely upon hearsay statements by the Debtor, although he admitted to owning both the boat slips, he claims

PL.Memo.Opinion.Granting.SJ.doc

to have transferred the Pompano Beach boat slip either in 2004 or by "a later deed." (D.E. 214 at ¶ 4)  Debtor's Affidavit, however does not attach either deed which transfers any interest of Debtor in the boat slip.   Further, Debtor does not offer any credible explanation as to why the 2004 Trustee Quit Claim Deed, and Debtor's Trust, referenced in Cadle's Motion, do not appear in Debtor's Bankruptcy Schedules or any amendment thereto.

Debtor's Affidavit with respect to Boat Slip 39B, in Paragraph 5, falsely claims that Boat Slip 39B is listed in Debtor's Bankruptcy Schedules, when it is not.  The Court finds Debtor made false statements under oath in connection with his bankruptcy proceeding concerning the two boat slips.

**Debtor concealed his interest in the S&P Partnership, the transfer of his S&P Partnership funds.**

Pursuant to the Memorandum Opinion Sanctioning Debtor for Discovery Violations (D.E. 179), the Court granted the sanction that the Court will draw negative inferences "For each document that was not produced, but, which should have and could have been, the Court will infer that the document supports Cadle's position."  As a sanction for Debtor's discovery violations, the Court deemed established the following facts: (a) that the Debtor was a holder of the S&P Account and that he was aware of all the transactions relating to it; (b) that the Debtor concealed the S&P Account checks paid to the Debtor (check # 3596, 3674, 3578) totaling $115,000.00, and (c) that the Debtor has engaged in a general pattern of concealment of his financial affairs. (D.E. 179)

Excerpts of the deposition transcript of Jennifer Stasch Weber, Debtor's daughter, taken on September 6, 2005, were filed in this action as Exhibit D to D.E. 170. Jennifer Weber testified that:

PL.Memo.Opinion.Granting.SJ.doc

(a)    Debtor kept the records of his business dealings with Jennifer that were sought in Cadle's subpoena to Jennifer Stasch Weber (pp 6, 24-26);

(b)    Jennifer could not remember the joint accounts she had with her father, the Debtor (pp.10-12);

(c)    Jennifer did not know why she had joint accounts with her father or who put the money into the joint accounts (pp.11-13, 20);

(d)    Jennifer had moved and did not know her father's current girlfriend or fiancé (p. 20);

(e)    Jennifer did not remember the name of anyone her father had dated when she lived near him (p.20-21); and

(f)    Jennifer did not recall meeting and had not ever heard of anyone named Diane Bleyker (p. 20).

Although Jennifer Weber testified she could not recall any of the names of the Debtor's girlfriends and had never heard of Diane Bleyker, Cadle filed the S&P records, authenticated by Mr. Powell's Affidavit, showing Jennifer Weber had purportedly paid $543,029.02 to Diane Den Bleyker's S&P #2 account;  including a $275,000.00 check from Jennifer Weber's First Union account in December 2000 (See Exhibit C consisting of S&P records of S&P #2 account, produced by S&P on 12-27-2006, attached to Ex. C to D.E. 198), and a $268,029.02 transfer from Debtor's S&P account to Den Bleyker's S&P #2 account on March 22, 2001 (See Exhibit C consisting of S&P records of S&P #2 account, produced by S&P on 12-27-2006, attached to Ex. C to D.E. 198).  Debtor offers no evidence or explanation as to why Jennifer Weber would have transferred $543,029.02 to a new S&P #2 account titled in Den Bleyker's name, at the same time Debtor had admitted he was concealing his other funds in Den Bleyker's Bank of America Account. Den Bleyker and Jennifer Weber have not submitted any affidavit offering any explanation of whose funds were transferred into the S&P #2 account or why Den Bleyker kept these funds segregated from her S&P #1 account.

Debtor, in Paragraphs 13 through 28 of his Affidavit claims he has no idea why

the S&P account was titled in his name. However he admits that he opened the S&P account in 1992 with his check, and he was the only person who ever signed the S&P Partnership Agreement. The Debtor further admits receiving or withdrawing funds from the S&P account on numerous occasions over the years.  Debtor nevertheless, claims the S&P account was opened with Jennifer Weber's funds, without providing the Court with a single evidentiary record supporting this claim. Likewise, Debtor offers no records or explanation to show why Jennifer Weber's alleged funds were continually paid to him out of this account, instead of being used by Jennifer Weber.  Debtor further admits that he was authorized to sign Jennifer Weber's name in order for him to withdraw funds out of the account, which again contradicts his claim that the funds were Jennifer Weber's.

Debtor's Affidavit regarding the S&P account is without creditability and is contradicted by other evidence. Debtor's Affidavit makes extensive references to additional inadmissible hearsay records that Debtor has failed to provide.  The Court finds that Debtor has made false statements, concealed, and failed to offer a credible explanation of the S&P funds.

**Debtor violated two Court Orders resulting in prejudice the administration of Debtor's bankruptcy estate.**

Debtor failed to disclose the documents sought in Cadle's 2005 Request for Production and then failed to comply with the two subsequent Court Orders D.E. 82 and D.E. 131.  Debtor's violations were willful, bad faith violations of this Court's orders as expressly found by the Court in D.E. 179 and in the subsequent Order Denying Debtor's Motion for Reconsideration (D.E. 189).  Debtor's failure to comply with the prior Court orders, and his general pattern of concealment of his financial affairs have also been found to have been prejudicial to his creditors and the administration of his bankruptcy

PL.Memo.Opinion.Granting.SJ.doc

11

estate in D.E. 179.  Debtor did not appeal these rulings.  The Court's prior rulings are buttressed by the subsequent documents Cadle obtained directly from S&P and the Affidavit of Michael Sullivan (Ex. C to D.E. 198).

As a discovery sanction, the Court found established the following facts: (a) that the Debtor was a holder of the S&P Account and that he was aware of all the transactions relating to it; (b) that the Debtor concealed the S&P Account checks paid to the Debtor (check # 3596, 3674, 3578) totaling $115,000.00, and (c) that the Debtor has engaged in a general pattern of concealment of his financial affairs. (D.E. 179)

Debtor's Affidavit in Paragraph 29, also contains Debtor's new and more damaging admissions that Debtor had possession of "volumes of documents" beginning in January 31, 2006, that Debtor admits were relevant to this adversary because Debtor intended to use them as trial exhibits.

Debtor's Affidavit, including Paragraph 36, also makes absolutely no attempt to explain how or when Debtor came up with the Exhibit C to his Motion for Rehearing, which was not a part of the S&P records and which had never been previously been produced by any party.  Accordingly, Debtor's Affidavit provides additional evidence supporting the Court's prior findings, establishing that Debtor had possession of additional concealed and withheld records.

**Debtor failed to disclose his position as a Director in Exuma Adventures, Ltd.**

Debtor's Bankruptcy Schedules concealed Debtor's position as Director and Secretary of Exuma Adventures Ltd.  Debtor also initially failed to produce any Exuma Adventures, Ltd. records that he had control over as a director of that entity.  Debtor eventually produced only part of these records, including the Exuma Adventures, Ltd.

minutes dated March 31, 2005, of a meeting at Debtor's scheduled residence, signed by the Debtor, showing the corporate positions he held with that entity and admitting actions he undertook on its behalf post-bankruptcy. (Ex. "G" to D.E. 198) Exhibit "G" shows that Exuma Adventures, Ltd. was not a worthless entity because it sold real property for $327,500.00 in the March 31, 2005 sale, only 44 days after Debtor filed his bankruptcy petition.  Debtor's Affidavit admits Debtor's directorship but argues that Debtor had no obligation to disclose his directorship because he was not a shareholder and only Den Bleyker's funds were used to purchase the Bahamas property.  Debtor again provides no documentation to support his Affidavit and fails to offer any explanation for the false statements in his schedules that failed to disclose he was a director of this entity, and the still non-produced documentation identified in Cadle's discovery and sanction motions.

**Debtor's schedules reflecting a lien on his Mercedes automobile, with $300.00 per month payments to Jennifer Weber were false.**

Debtor failed to provide any records to establish he borrowed money from Jennifer Weber to create the lien on his Mercedes or that he made the $300.00 per month payments to Jennifer Weber, which Debtor included in his Bankruptcy Schedules.  Cadle argues that Debtor falsely scheduled the lien to defraud his creditors by concealing the Debtor's equity in the Mercedes.

In Page 16 of his Affidavit, Debtor responds that he made cash payments on the Mercedes lien. Debtor's Trial Exhibit ZZZ contains the records of amounts paid by Debtor from 2001 through February 2005 and contains no payments to Debtor's daughter Jennifer Weber for the Mercedes lien. Although, Trial Exhibit ZZZ reflects Debtor withdrew limited cash from the Bank of America account from 2001 through 2004. There is no credible evidence to substantiate payments on the Mercedes.

Accordingly, the Court finds that Debtor's scheduled Mercedes lien and cash payments to Jennifer Weber are intentional false statements under oath to conceal Debtor's equity in his Mercedes.

## CONCLUSIONS OF LAW

### A.    Summary Judgment Standard

This motion is governed by Bankruptcy Rule 7056 which incorporates Rule 56 of the Federal Rules of Civil Procedure.  In moving for or opposing summary judgment, the parties must provide the court with:

> . . . proper documentary evidence to support their contentions and cannot rest on mere allegations and pleadings, Boruski v. United States, 803 F.2d 1421, 1428 (7th Cir. 1986), or upon conclusory allegations in affidavits. First Commodity Traders, Inc. v. Heinold Commodities Traders, Inc., 766 F. 2d 1007, 1011 (7th Cir. 1985).  The Court must view the evidence and any permissible inferences from the materials before it in favor of the non-moving party, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588-89, 106 S.Ct. 1348, 1356-57, 89 L.Ed. 2d 538 (1986), as long as the inferences are reasonable.  Davis v. City of Chicago, 841 F.2d 186, 189 (7th Cir. 1988).  The non-moving party must show that the disputed fact is material; that is, it must be outcome-determinative under the applicable law.  Wainewright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n, 806 F.2d 146, 149 (7th Cir. 1986).

Smith v. Ansor, 801 F.Supp. 176, 181 (D.C. S.D. Ill. 1992)

Hearsay statements in an affidavit are also inadmissible. Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 891 F.Supp. 510, 514 (D.C. N.D. Cal. 1995).  Failure to provide any evidentiary support for bare assertions of the existence of factual disputes in opposition papers to a motion for summary judgment, furnishes a basis for granting a motion for summary judgment.  Donnelly v.Guion, 467 F.2d 290, 293 (2d Cir. 1972); Young v. City of Palm Bay, 358 F.3d 859, 861 (11th Cir. 2004)(noting that the responding party must provide "specific facts showing that there is a genuine issue for

trial." The Court also recognized that a "mere scintilla" of evidence is insufficient to defeat a motion to dismiss.).

Applying these requirements to Debtor's Affidavit  results in the failure of the affidavit to establish the existence of any credible evidence to create a disputed issue of material fact. Debtor's Affidavit contains numerous statements where Debtor contradicts other statements within the same Affidavit, as previously pointed out in the Findings of Fact. Debtor's Affidavit also repeatedly contradicts Debtor's prior admissions.  Debtor's Affidavit also relies upon multiple improper conclusory allegations and hearsay, none of which are supported by any type of documentary evidence which would be admissible at trial.

## Count I

Section 727(a)(2) provides:

(a) The court shall grant the debtor a discharge, unless - . . . (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or had permitted to be transferred, removed, destroyed, mutilated, or concealed, - . . . (A) property of the debtor, within one year before the date of filing of the petition; or (B) property of the estate, after the date of the filing of the petition;

Debtor's two boat slips, two weeks of timeshare, funds in the Bank of America account 8563, the S&P funds and the equity in his Mercedes were concealed by the Debtor, within one year before and after the filing of his bankruptcy petition.  In the present case, Debtor's sworn admissions that he transferred his funds into the Bank of America account to hinder Cadle's garnishment efforts, and failure to schedule any of the assets identified in Cadle's Motion, shows concealment of Debtor's property with fraudulent intent to hinder, delay and defraud his creditors, both before and after his

bankruptcy.

In <u>In re Adeeb</u>, 787 F.2d 1339 (9th Cir 1986), the court recognized that §
727(a)(2) denial of discharge provisions are "construed liberally in favor of a debtor and
strictly against those objecting to discharge," and that § 727(a)(2) requires a finding of
actual intent to hinder, delay or defraud creditors, which may be inferred or established
from circumstantial evidence. <u>Id</u> at 1342, 1343. When a debtor admits that he acted with
the intent penalized by § 727(a)(2)(A), there is no need for the court to rely on
circumstantial evidence or inferences in determining whether the debtor had the requisite
intent. <u>Id</u> at 1343.

In the present case, the Debtor's Sworn Testimony (D.E. 170 para. 23, 24, 25) and
Affidavit (D.E. 213 para. 10) admits Debtor's transfers were made with the intent to keep
Debtor's funds out of his creditor's reach. Additionally, the undisputed circumstantial
evidence shows Debtor's fraudulent intent pursuant to preceding Findings of Fact and the
statutory factors listed in § 726.105(2), <u>Fla. Stat.</u> and 11 U.S.C. 548.    Accordingly
Debtor's discharge is denied pursuant to § 727(a)(2)(A) & (B).

### Count II

Section 727(a)(3) provides:

(a) The court shall grant the debtor discharge, unless - - - . . . (3) the debtor
has concealed, destroyed, mutilated, falsified or failed to keep or preserve
any recorded information, including books, documents, records, papers
from which the debtor's financial condition or business transactions might
be ascertained, unless such act or failure to act was justified under all of
the circumstances of the case;

Debtor concealed, failed to keep, or produced falsified records relating to his
ownership of his two boat slips, his timeshare weeks, records of the Bank of America

Account, or the S&P transactions, his Director position with Exuma Adventures, Ltd., his falsified scheduled payments upon his Mercedes. Debtor also admitted he failed to supplement his response to Cadle's prior Request for Production, continuously concealing and withholding "volumes" of records from January 2006 through May of 2006 that had previously been sought by Cade. Debtor also objected to Cadle obtaining the S&P records by subpoena from third parties (D.E. 122), and violated two court orders (D.E. 82 and 131), in an unsuccessful attempt to conceal the records relating to his assets. Debtor concealed and failed to provide the chapter 7 trustee, Leslie Osborne, and his creditor, Cadle with the above records concerning Debtor's financial condition and business transactions.

Debtor's failure to maintain and produce the various financial records made it impossible to determine the Debtor's true financial condition, such that Debtor's discharge shall be denied pursuant to § 727(a)(3).

## Count III

Section 727(a)(4) provides:

> (a) The court shall grant a debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, in or in connection with the case  . . . (A) made a false oath or account. . . .  (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

In re Chalik, 748 F.2d 616 (11th Cir. 1984), discusses denial of discharge requirements based upon a material false oath under § 727(a)(4), stating:

> The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business deals, or the existence and disposition of his property.  In re Steiker, 380 F.2d 765k,

768 (3d Cir. 1967).  See also <u>Metheany v. United States</u>, 365 F.2d 90, 93
(9th Cir 1996) ("material matter" refers not only to main fact which is
subject to inquiry but also to any fact or circumstances which tend to
corroborate the proof adduced to establish the main fact.")    The
recalcitrant debtor may not escape a § 727(a)(4)(A) denial of discharge by
asserting that the admittedly omitted or falsely stated information
concerned a worthless business relationship or holding; such a defense is
specious.  <u>Diorio v. Kreisler-Borg Const. Co.</u>, 407 F. 2d 1330 (2d Cir.
1969).    It makes no difference that he does not intend to injure his
creditors when he makes a false statement.  Creditors are entitled to judge
for themselves what will benefit, and will prejudice them.

<u>Id</u> at 618.

The Debtor's false statements under oath were material because they involved
Debtor's financial dealings and assets.  Debtor's attempted Affidavit defense, that the
assets that Debtor concealed and his false statements involved worthless assets, are
"specious" defenses pursuant to <u>In re Chalik</u>, because Debtor had an obligation to
truthfully disclose all of his assets and answer all questions in his Bankruptcy Schedules.

Debtor knowingly and fraudulently filed schedules that contain false information
concerning the Debtor's assets.  Debtor's schedules also failed to account for and conceal
Debtor's interest in the transferred S&P Partnership proceeds to Den Bleyker and related
records concerning the above.

Debtor has also remained silent and allowed his counsel to file both an Affidavit
and Response (D.E. 142 and 149), stating that Debtor had produced certain Bank of
America statements.  However, Debtor's Motion for Rehearing of the Order Sanctioning
Debtor, admits that Debtor did not produce accurate copies and instead produced altered
statements that had undergone a photocopy, cut and paste "method of redaction." (D.E.
182)  Debtor's Affidavit attempts to avoid responsibility for producing altered records by
blaming the alterations on Den Bleyker.  Due to Debtor's production of these "redacted

documents," however it is impossible to tell what information has been altered and concealed in Debtor's production.  What is certain, is that Debtor's counsel's Affidavit and Debtor's Response did not disclose that Debtor produced altered records in violation of the Order.

Debtor's false statements and his failure to produce the above records show that the Debtor has filed knowingly fraudulent false oaths in his schedules and in subsequent filings.  Debtor also attempted to conceal the afore discussed assets.

Debtor's false sworn statements concealing his assets, was done to hinder and defraud his creditors by falsely understating the Debtor's assets in order to keep these assets from being liquidated by his creditors and the Chapter 7 Trustee.  Accordingly, Debtor's discharge shall be denied pursuant to § 727(a)(4) for making false oaths and withholding material information relating to his financial affairs.

### Count IV

Section 727(a)(5) provides:

(a) The court shall grant debtor a discharge, unless . . .(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities:

Debtor has failed to provide a credible explanation as to his failure to schedule or otherwise explain the loss of his S&P and Bank of America funds as well as the loss of his income earned prior to 2001 and his two unscheduled boat slips that were titled in his name prior to and after his bankruptcy filing.  Debtor likewise failed to explain his concealment of his timeshare weeks that he had listed for sale immediately prior to and after filing for bankruptcy.  He also failed to offer any explanation as to his disposition of his $115,000.00 he withdrew from the S&P account and his subsequent $268,029.20 of

PL.Memo.Opinion.Granting.SJ.doc

S&P funds in 2001 that were transferred to the S&P account #2 titled in the name of Diane Den Bleyker, and his additional moneys he admitted depositing into Den Bleyker's Bank of America Account 8563 from 2000 on.   None of Debtor's above assets or transfers were disclosed in his Bankruptcy Schedules.   Debtor's admissions that he transferred his funds into an account titled in Den Bleyker's name to defraud his creditors does not qualify as a good faith explanation regarding Debtor's disposition of assets.

The Debtor's loss of assets is not required to occur within the year's time under § 727(a)(5).  Hawley v. Cement Industries, Inc., 51 F.3d 246, 249 (11th Cir. 1995) (citing In re Chalik, 748 F.2d 616 (11th Cir. 1989).   Accordingly, Debtor's discharge should be denied pursuant to § 727(a)(5).

**Debtor's discharge should be denied pursuant to § 727(a)(6)(A) due to Debtor's refusal to obey two lawful orders of the Court.**

Section 727(a)(6)(A) provides:

> (a) The court shall grant the debtor a discharge, unless-
>
> \*\*\*
>
> (6) the debtor has refused, in the case-
>
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

In this adversary proceeding the Court has already determined that Debtor willfully violated two orders that were prejudicial to Cadle and the administration of Debtor's bankruptcy estate. The additional evidence consisting of a new Affidavit by Debtor further supports the Court's prior findings.   Debtor has not appealed and has offered no good faith explanation for his violations of the two Orders.

Debtor has offered no credible explanation as to why he refused to produce all

PL.Memo.Opinion.Granting.SJ.doc

cancelled checks and complete unaltered statements from the Bank of America accounts where his funds were deposited. Debtor has offered no justification for his refusals to comply with the Court's Order by his failure to disclose whether or not the requested records exist and to disclose who holds the records that Debtor failed to produce.

In order to prove a prima facie case for denial of discharge pursuant to § 727(a)(6), a plaintiff must prove that the debtor was aware of the order, and failed to comply with the order. In re Constantini, 201 B.R. 312, 315 (Bankr. M.D. Fla. 1986). Once a creditor meets this prima facia burden of proof, the burden shifts to the debtor to offer an excuse and justification that shows a good faith basis for the debtor's failure to comply with the violated order.

The Court has already found that Debtor's violations of the Court's two orders were willful and in bad faith. Debtor's Motion for Rehearing (D.E. 182) and Affidavit D.E. 213, now provide new and additional evidence supporting the Court's prior rulings that Debtor intentionally violated the two prior court orders. Attached to Debtor's Motion for Rehearing, Debtor produced new, previously withheld documents for the first time, showing Debtor's possession of additional non-produced records.

Debtor's Motion for Rehearing for the first time, produced previously concealed additional documents that are responsive to Cadle's 2005 Request for Production and the Court's prior Orders. Those new documents are comprised of Exhibits A, B, and C, attached to the Debtor's Motion for Rehearing.[2] Debtor's Exhibits A, B, and C, however, were not listed in Debtor's counsel's Affidavit of documents Debtor had produced (D.E.

---

[2] Exhibits A and B were eventually obtained by Cadle on May 2, 2007 directly from S&P in response to subpoenas that Stasch unsuccessfully attempted to quash. See ¶ 5 Affidavit of Michael Sullivan attached as Exhibit "C" to D.E. 198.

PL.Memo.Opinion.Granting.SJ.doc

142), and were not previously produced by Debtor in response to Cadle's prior discovery or the Court's two prior orders.

Debtor's actual S&P records contradict Debtor's attempted excuse that his S&P Partnership interest was owned by Jennifer Stasch Weber.  Neither Debtor, Jennifer Stasch Weber, or S&P have produced any Partnership Agreement that has been signed by Jennifer Weber.  Debtor as the sole signatory of the S&P Partnership Agreement obviously had control over his own partnership records, such that he could have produced them as required by the Court order. If Debtor had truly been ignorant of the records showing his S&P ownership and transfers to Den Bleyker, as he claims, he would have had no reason to incur attorney fees to obstruct Cadle's S&P discovery.

Debtor's Motion for Rehearing [D.E. 182] also includes Exhibit C, which has never been produced by anyone, prior to being attached to Stasch's Motion for Rehearing. It is allegedly a February 12, 1994 letter from Jennifer Stasch to S&P.  Debtor admits in Paragraph 13 of his Motion for Rehearing that Exhibit C was not obtained from S&P's records and it was not a part of the S&P files.  Michael Sullivan's Affidavit also confirms that Exhibit C is not a part of the S&P records.  John Benetis' Affidavit likewise confirms that Cadle had not received this document from its S&P subpoenas.  The contents of Exhibit C also contradict the actual S&P records after February 12, 1994, because the S&P records continue to list Debtor as owner after February 12, 1994. Debtor's argument that he did not have and could not produce any S&P records is contradicted by the fact that Debtor unexplainably obtained or manufactured Exhibit C, consisting of the February 12, 1994 letter allegedly from Jennifer Stasch to S&P, out of

PL.Memo.Opinion.Granting.SJ.doc

thin air, long after the expiration of his deadlines for complying with the Court's Orders that he violated.

Debtor's responses to the Request for Production and his counsel's prior Affidavit both failed to produce or disclose that Exhibit C and the other still missing documents existed, to identify who held them, or where they were located, in multiple violations of this Court's prior Orders. Debtor's production of Exhibit C contradicts Debtor's claim that he had previously fully complied with the Court's Orders and Cadle's 2005 Request for Production. Debtor's delinquent production of Exhibit C, is a violation of this Court's two prior orders. This requires denial of Debtor's discharge.

Debtor did not challenge or dispute the extensive and costly delays caused by the Debtor's failure to produce the records he was ordered to produce prior to trial and that he concealed when responding to Cadle's Request for Production.

Debtor admitted he violated the first Court Order (D.E. 81) by failing to produce his trial exhibits, as required by (D.E. 81), resulting in the continuance of the trial. Debtor also violated (D.E. 131) by failing to execute, then file any Affidavit listing the actual records he had previously produced. Debtor's Affidavit now additionally admits that he intentionally withheld volumes of requested records that had been in his possession since January 2006.

Finally, Debtor has never disputed that he violated (D.E. 131) in the four additional instances as previously found by the Court: (1) Debtor admittedly failed to state item-by-item whether each non-produced document existed, (2) Debtor failed to state whether each non-produced item can be produced by Debtor, (3) Debtor failed to state where and from whom each non-produced item can be obtained, and (4) Debtor

failed to arrange for the delivery and copying of a single non-produced record following the Court's order.   Accordingly, Debtor's discharge shall be denied due to Debtor's failure to offer any good faith excuse for Debtor's multiple undisputed intentional violations of the two Court Orders.

**ORDERED AND ADJUDED** that:

The Plaintiff's Motion for Summary Judgment Denying Debtor's Discharge is **GRANTED**.

Copies to:
Keith A. Graham
David Tangora
Trustee Osborne
U.S. Trustee

PL.Memo.Opinion.Granting.SJ.doc